RENDERED: OCTOBER 3, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1008-MR

DEANDRE MAURICE ADAMS                            APPELLANT

v.                  APPEAL FROM KENTON CIRCUIT COURT
HONORABLE KATHLEEN LAPE, JUDGE
ACTION NO. 22-CR-00899

COMMONWEALTH OF KENTUCKY                  APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, COMBS, AND EASTON, JUDGES.

COMBS, JUDGE: In this criminal appeal, Deandre Maurice Adams challenges the judgment of the Kenton Circuit Court sentencing him to serve ten-years' imprisonment. A jury convicted him of possession of a handgun by a convicted felon in violation of Kentucky Revised Statutes (KRS) 527.040 and of being a persistent felony offender pursuant to the provisions of KRS 532.080. Adams argues that the trial court erred by denying his motion to suppress evidence and by

failing to grant his motion for directed verdict. He also contends -- for the first time -- that the provisions of KRS 527.040 (criminalizing possession of a firearm by a convicted felon) are unconstitutional as applied. After our review, we affirm.

In the early morning hours of August 2, 2022, Officer Sean Dooley of the Villa Hills Police Department spotted a vehicle swerving out of its lane of travel along I-75 in Kenton County. A complaint had been lodged earlier that indicated that this vehicle was being driven erratically. Officer Dooley initiated a traffic stop. He immediately detected the odor of marijuana emanating from the vehicle. He also saw a "commercial style marijuana product" in a jar on the dash.

Deandre Adams of Douglasville, Georgia, was driving the vehicle. Adams indicated that the vehicle was his delivery van and that he was traveling through Northern Kentucky from Baltimore to St. Matthews with a stopover in Cincinnati to visit with his son. Officer Dooley explained to Adams that possession of marijuana was illegal in Kentucky and that because he smelled it and saw it in plain view, he had probable cause to search the vehicle.

When Officer Dooley asked about the possession of weapons, Adams assured him that there were no weapons in the vehicle. However, inside a bag that he took from between the driver and passenger seats, Officer Dooley found a 9mm handgun with a hollow point round in the chamber and 15 rounds in the magazine; another jar of marijuana; a pair of men's slippers; and miscellaneous toiletries,

-2-

including a bottle of men's cologne. Despite its contents, Adams explained that the bag belonged to his girlfriend and that the handgun was hers. Adams admitted that he was a convicted felon, and he was arrested.

Adams was indicted, and in December 2022, he filed a motion to suppress the incriminating evidence. Adams argued that the evidence had been discovered by Officer Dooley as a result of an illegal search that violated his rights as guaranteed by the Fourth Amendment to the United States Constitution. Specifically, Adams contended that the search of the entirety of his vehicle exceeded the scope of a warrantless search permitted incident to his arrest. But he did not contend that Officer Dooley lacked probable cause to conduct the search pursuant to the automobile exception to the warrant requirement. The trial court denied the motion.

Some months later, the trial began. Adams stipulated that he was a convicted felon. After a jury was seated and opening statements were concluded, Officer Dooley took the stand. He testified about the events of the early morning hours of August 2 as summarized above and his body-worn camera footage was shown to the jury. An expert witness was called to discuss the nature of the handgun.

When the Commonwealth announced that its case-in-chief was complete, Adams moved for a directed verdict. Counsel declined to announce the

basis of that motion. Instead, he "explain[ed] that he would 'submit' the motion and argue grounds at the close of evidence." The trial court declined to grant the motion, and Adams began to present his defense.

Treva Whitfield, Adams's girlfriend, testified that she owned the gun and the bag. She produced a receipt for the handgun. Whitfield indicated that she used the bag to carry her things to the gym on the morning of July 31, 2022 -- the day that Adams left Georgia; that she decided to use the bag to pack some of Adams's things for his trip; and that she forgot to remove the handgun before he left. Adams took the stand and confirmed Whitfield's testimony. After the defense closed its case, Adams moved again for a directed verdict. He argued that the Commonwealth failed to present evidence to show that Adams knowingly possessed Whitfield's handgun. The court denied the motion.

The trial court instructed the jury, closing arguments were made, and the jury began deliberating. The jury convicted Adams of possession of a handgun by a convicted felon and of being a persistent felony offender in the second degree. Based upon the jury's recommendation, Adams was sentenced by the court to five-years' imprisonment -- enhanced by his status as a persistent felony offender to ten years. This appeal followed.

First, Adams contends that the trial court erred by declining to grant his motion to suppress the incriminating evidence. He acknowledges that defense

counsel did not address the automobile exception to the warrant requirement in his motion to suppress the evidence. Nevertheless, Adams argues that the issue is preserved for our review on appeal. Alternatively, he argues that we should review the trial court's decision for palpable error.

Where the issue is adequately preserved for our review, we analyze a trial court's denial of a motion to suppress by assessing its findings of fact for clear error and its conclusions of law under a *de novo* standard of review. *Jackson v. Commonwealth*, 187 S.W.3d 300, 305 (Ky. 2006) (citing *Welch v. Commonwealth*, 149 S.W.3d 407, 409 (Ky. 2004)). Where an argument is not addressed in a suppression motion, it is not ordinarily considered upon appellate review. *Commonwealth v. Smith*, 542 S.W.3d 276, 285 (Ky. 2018). But, as Adams correctly observes, even where an issue is inadequately preserved, we may review the trial court's decision for palpable error. Kentucky Rules of Criminal Procedure (RCr) 10.26. However, we may grant relief only where we determine that manifest injustice has resulted from the unpreserved error. *Id.*

As explained by the Supreme Court of Kentucky, an error is palpable where it is "easily perceptible, plain, obvious and readily noticeable." *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006) (citations omitted). The rule's requirement of manifest injustice requires "showing [a] probability of a different result or error so fundamental as to threaten a defendant's entitlement to due

process of law." *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006). "Manifest injustice is found if the error seriously affected the fairness, integrity, or public reputation of the proceeding." *McGuire v. Commonwealth*, 368 S.W.3d 100, 112 (Ky. 2012) (internal quotation marks and citations omitted).

"[A]ll searches without a warrant are unreasonable unless it can be shown that they come within one of the exceptions to the rule that a search must be made pursuant to a valid warrant." *Cook v. Commonwealth*, 826 S.W.2d 329, 331 (Ky. 1992) (citation omitted). Under the automobile exception, police officers are permitted "to search a legitimately stopped automobile where probable cause exists that contraband or evidence of a crime is in the vehicle." *Dunn v. Commonwealth*, 199 S.W.3d 775, 776 (Ky. App. 2006) (citing *United States v. Ross*, 456 U.S. 798, 800-01, 102 S. Ct. 2157, 2159-61, 72 L. Ed. 2d 572, 578 (1982)).

In this case, Officer Dooley stopped Adams's van because of a traffic violation. He was met with the strong odor of marijuana coming from the vehicle. Officer Dooley also noticed marijuana in a container on the dash. This interaction gave Officer Dooley probable cause to believe that evidence of a crime might likely be found in the vehicle. Officer Dooley was authorized by probable cause to conduct a warrantless search of Adams's person, his vehicle, and its contents. The handgun and the magazine were discovered as a result of the search. Officer

Dooley's search of the vehicle was justified under these facts, and his actions were reasonable under the circumstances.

We summarily reject Adams's untimely contention that "in light of the changing legal landscape" where "[m]arijuana is no longer per se illegal[,]" Officer Dooley's immediate detection of an odor of marijuana could not alone establish probable cause to search the vehicle. As Adams readily concedes, possession of marijuana was plainly illegal on the date the search was undertaken. And, as we have observed, probable cause was clearly established as a result of the odor emanating from the vehicle. No subsequent change in the law could have affected the trial court's probable-cause analysis. Consequently, there was no error. We affirm the trial court's denial of the motion to suppress.

Next, Adams contends that the trial court erred by failing to direct a verdict. He argues that there was no proof that he knowingly possessed the handgun found in the vehicle.

When presented with a motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991). If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict will not be granted.

*Id.* The trial court must assume that Commonwealth's evidence is true, reserving to the jury questions as to the credibility and weight to be given to the testimony. *Hall v. Commonwealth*, 645 S.W.3d 383, 392 (Ky. 2022) (quoting *Benham*, 816 S.W.2d at 187). In order to defeat a directed verdict motion, the Commonwealth must produce "'more than a mere scintilla of evidence.'" *Lackey v. Commonwealth*, 468 S.W.3d 348, 352 (Ky. 2015) (quoting *Benham*, 816 S.W.2d at 187).

To convict Adams, the Commonwealth had the burden of proving that he possessed, manufactured, or transported a handgun and that he had previously been convicted of a felony. *See* KRS 527.040. Adams stipulated to the fact that he was a convicted felon. Possession of a handgun may be proven through either actual possession or constructive possession. *Deboy v. Commonwealth*, 214 S.W.3d 926, 930 (Ky. App. 2007) (citation omitted). The Commonwealth prosecuted Adams for possession of the handgun under a theory of constructive possession.

To prove constructive possession, the Commonwealth had to present evidence to establish that the contraband was subject to the defendant's dominion and control. *Hargrave v. Commonwealth*, 724 S.W.2d 202, 203 (Ky. 1986), *cert. denied Hargrave v. Kentucky,* 484 U.S. 821, 108 S. Ct. 81, 98 L. Ed. 2d 43 (1987). The Supreme Court of Kentucky has held that a person "who owns or exercises

dominion or control over a motor vehicle in which contraband is concealed, is deemed to possess the contraband." *Leavell v. Commonwealth*, 737 S.W.2d 695, 697 (Ky. 1987) (citing *United States v. Vergara*, 687 F.2d 57 (5th Cir. 1982)). As noted in *Dixon v. Commonwealth*, 149 S.W.3d 426 (Ky. 2004), this reasoning is in accordance with the general rule that "[t]he contents of an automobile are presumed to be those of one who operates it and is in charge of it, and this applies particularly where the operator is also the owner[.]" *Id.* at 429 (quoting *Chambers v. State*, 293 S.E.2d 20, 21 (Ga. App. 1982)). We have previously applied the principles of *Leavell* to analyze constructive possession of a firearm in a vehicle by a convicted felon. *Deboy*, 214 S.W.3d at 930.

In the case before us, the Commonwealth presented evidence that Adams exercised dominion and control over the vehicle. Indeed, there was no evidence to the contrary. Adams was authorized to use the vehicle; he was operating it at the time; and there were no passengers. Because the Commonwealth produced "more than a mere scintilla of evidence" to support the charge, the trial court did not err by denying the motion for directed verdict. *Lackey*, 468 S.W.3d at 352 (quoting *Benham*, 816 S.W.2d at 187).

Finally, Adams presents a challenge to the constitutionality of KRS 527.040 as applied to this prosecution. While Adams did not question the constitutionality of the statute below, he did not abide by the provisions of KRS

-9-

418.075(1), which requires a defendant who wishes to challenge the constitutionality of a statute to notify the Attorney General of his claim "before judgment is entered." "[S]trict compliance with the notification provisions of KRS 418.075 is mandatory[.]" *Benet v. Commonwealth*, 253 S.W.3d 528, 532 (Ky. 2008). The notification requirement applies even in criminal cases where the Attorney General represents the Commonwealth -- regardless of whether a statute is challenged on its face or as applied. *Id.*

In *Couch v. Commonwealth*, 686 S.W.3d 172, 179 (Ky. 2024) (citing *Benet*, 253 S.W.3d at 532), the Supreme Court of Kentucky recently observed that "[o]ur courts refuse to address arguments that a statute is unconstitutional unless these notice provisions [of KRS 418.075] are fully satisfied." The Court explained as follows:

> [G]ood reason exists for [KRS 418.075]. Kentucky does not have a unified prosecutorial system, and although there is a relationship between the Attorney General and local prosecuting officials, Commonwealth's Attorneys do not answer to the Attorney General. *See generally* KRS 15.220 and 15.725. The Attorney General, who is elected statewide by the Commonwealth's voters and not just by local citizens, "is in a unique position to defend the constitutionality of an act of the General Assembly. The Attorney General must be given this opportunity at the trial level because a declaration regarding the constitutionality of a statute affects all the citizens of the Commonwealth[.]" *Benet*, 253 S.W.3d at 532 n.13; *see Brashars v. Commonwealth*, 25 S.W.3d 58, 65-66 (Ky. 2000) (rejecting argument that notice to the Attorney General regarding constitutionality of a statute was not

-10-

required because the Commonwealth was already a party to the criminal action); *Jacobs v. Commonwealth*, 947 S.W.2d 416, 419 (Ky. App. 1997) (stating "[w]e recognize that in criminal cases such as this the Commonwealth is represented at the trial level by local prosecuting officials. . . . For that reason, we conclude that the notice requirements of [KRS 418.075] must be met in criminal, as well as civil, actions[ ]").

*Couch*, 686 S.W.3d at 179-80.

Adams acknowledges in his appellate brief that his constitutional challenge to KRS 527.040 is unpreserved. Nevertheless, he urges us to review his contention under the provisions of RCr 10.26. In light of the unequivocal declarations of the Kentucky Supreme Court in *Couch*, we must decline to undertake such a review with respect to this issue.

The order of the Kenton Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Erin Hoffman Yang
Assistant Public Advocate
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Melissa A. Pile
Assistant Attorney General
Frankfort, Kentucky